RILEY READ, Appellant, *v.* THE ERIE RAILWAY COMPANY et al.,
Respondents.

The owners of a farm conveyed to a railroad company a portion thereof
upon which it built a depot and water-tanks. The grantors also conveyed
"the right to draw water from any springs or streams on their premises"
for the purpose of supplying the depot and water station, "by means of
pipes or other suitable device in a proper manner, with full right of in-
gress and egress for the purpose of laying and repairing said pipes or
the device and the tanks connected therewith;" reserving, however, to the
grantors the right of drawing from such pipes or other device so much of
the water as was not needed for supplying said depot and water station.
In case there was no surplus at any time, the grantee was given the right
to shut off the communication of the grantors "from said pipes or other
device." The railroad company constructed, with the assent of the
grantors, a dam across a stream running through said farm, and took
water from the reservoir so formed through a wooden conduit. The
grantors erected a hotel upon another portion of their farm, which was
supplied with water through a half-inch pipe connected with said con-
duit. Said grantors subsequently conveyed the hotel property by deed,
which also conveyed "all the right, title and privilege to and of all of
the water now used on said premises," or to which the grantors "may
be entitled to by use, occupation, reservation or agreement" with said
railroad company, "or otherwise as appurtenant to said premises."
Said grantors thereafter granted to other persons rights to use portions of
such surplus waters. In an action by plaintiff, to whom the hotel prop-
erty and appurtenances had been conveyed, to restrain defendants from
using any of the surplus water, *held*, that the deed of the hotel property
did not convey all the surplus water, but only so much thereof as will
pass through a half-inch pipe ; but that plaintiff's title to so much of the
surplus was prior to the right of any others, so that in case of any defi-
ciency he was entitled to his supply before any of the grantees of such
surplus were entitled to draw.
The dam erected by the said railroad company was carried away and was
not rebuilt, but water was drawn directly from the stream. *Held*, that
no duty was imposed upon said company either by its deed or by the fact
that it had erected the dam for its own convenience to maintain it for the
benefit of the grantors or their assigns ; also that the company was not
confined to the use of so much water as was required by it at the time of
the grant for the purposes specified, or to the particular method of exercis-
ing its right first adopted.

(Argued October 28, 1884 ; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made November 23, 1881, which affirmed a judgment, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendants from using or diverting from the plaintiff's premises certain surplus waters to which plaintiff claimed himself entitled under a deed to him from Charles and James W. Knapp, and to which the Knapps acquired title by deed from James and Lural Faulkner.

The material facts are stated in the opinion.

*William Youmans* for appellant. The Faulkners, being the owners of the lands through which the stream flowed, had the absolute right to use and control the waters thereof in any manner they saw fit, so long as they did not interfere with the use of the water by other property-owners along the stream. (Angell on Water-courses [6th ed.], 181 ; *Follitt* v. *Long*, 58 Barb. 20.) The exception or reservation of the surplus water as contained in their deed was not a mere personal privilege, but passed to their grantees and thence by various mesne conveyances to the plaintiff. (*Borst* v. *Empie*, 5 N. Y. 33.) The grant to the railroad company having been general in its terms as to the right to draw water, etc., and not specifying the particular place, or size of the pipe, and it having with the acquiescence of its grantors entered upon the lands and built a reservoir, and inserted therein a pipe of two inches in diameter, and conducted water by said pipe across the grantors' lands, thereby the right and easement became fixed and certain. (*Onthank* v. *L. S. & M. S. R. R. Co.*, 8 Hun, 131 ; 71 N. Y. 194 ; 16 Johns. 22 ; 7 East, 149 ; 1 N. Y. 96.) It is apparent, from the language of the various conveyances, that the entire surplus of the waters passed by said conveyances to the plaintiff, and that he alone is entitled to the same. (*Borst* v. *Empie*, 5 N. Y. 33 ; *Penfield* v. *Clark*, 62 Barb. 590 ; 3 R. S., § 1 [5th ed.], 38 ; 6 Hill, 453 ; 16 Johns. 172 ; 8 id. 394.) The defendants other than the Erie Railway Company have no right to or interest in any of the surplus waters. (*Prentice* v.

*Geiger*, 71 N. Y. 343; Ang. on Water-courses, §§ 201, 204, 211, note, 377, 215, 514, 515; 36 Vt. 503; *White* v. *Spencer*, 14 N. Y. 247–249; Wash. on Easements and Servitudes, 162.) The plaintiff is entitled to recover such damages as he has sustained by reason of the diversion of the surplus water to which he is entitled. (Sedg. on Dam. 153; *Pollett* v. *Long*, 58 Barb. 20.) The trial court erred in holding that the Erie Railway Company or its receiver was not liable for not keeping up or keeping in repair the said dam. (6 Hill, 453; 16 Johns. 172; 8 id. 394; 3 id. 387; 9 East, 15.)

*O. W. Chapman* for the Erie Railway Company and Hugh J. Jewett, receiver, respondents. The phraseology in the Faulkner deed under which plaintiff claims does not create an exception but a reservation — a taking back of that once given. (*Craig* v. *Wells*, 11 N. Y. 315; *Ives* v. *Van Aukin*, 34 Barb. 566; 2 Abb. N. Y. Dig. 585, § 377.) Plaintiff cannot recover even under the Faulkner deed. The reservation to the Faulkners was personal to them and died with them, there being no words of perpetuity or of inheritance. (*Burr* v. *Mills*, 21 W. R. 293 [m. p.]; *Pierce* v. *Keator*, 9 Hun, 532; affirmed, 70 N. Y. 419; *Lucusterine Co.* v. *Stillwell*, 52 How. 152; *Bridger* v. *Pierson*, 1 Lans. 481.) The intent of the parties, appearing from the instrument, is the only thing to be sought for. (2 R. S. [6th ed.] 1130, § 2.) The covenant relates to a thing not *in esse* at the time the covenant is entered into, and such a covenant does not bind assigns unless they are mentioned. (*Tallman* v. *Coffin*, 4 N. Y. 134.) This reservation is not of an easement; it is only of a license. (Bingham on Real Estate, 17, 18; 2 Bouv. Inst. 170, 171.) When the Faulkners put their first pipe into that of the railroad company under the reservation, they thereby fixed and determined the extent of their rights to this water. (*Onthank* v. *R. R. Co.*, 71 N. Y. 194.)

*A. Taylor* for Griffis *et al.*, respondents. In the construction of a contract the intention of parties is to be inquired into, and

if not forbidden by law is to be effectuated and courts will look into the surrounding circumstances, existing when the contract was entered into, the situation of the parties and the subject-matter of the instrument. (*French* v. *Carhart*, 1 N. Y. 102.) Applying this principle to this case the language of the reservation is clear, and plaintiff is entitled to the water sufficient for his hotel, and the remainder was the property of the Faulkners and their successors, until it became vested in these defendants. (*Livingston* v. *Ten Brock*, 16 Johns. 22; *Attorney-Gen'l* v. *Parker*, 3 Atk. 576; *Attorney-Gen'l* v. *Foster*, 10 Ves. Jr. 327; *Weld* v. *Hornby*, 7 East, 199; *Rex* v. *Osborn*, 4 id. 327; *Doe* v. *Ries*, 8 Bing. 181.) The water right reserved in the deed to the railroad company was an incorporeal easement for the benefit of said lands, it was a perpetual right, and passed with the lands by assignment or descent. (*Borst* v. *Empie*, 1 Seld. 33; *Pierce* v. *Keating*, 70 N. Y. 419; *Burr* v. *Mills*, 1 Wend. 290; *Elliott* v. *Fitchburg R. R. Co.*, 10 Cush. 193; *Merrill* v. *Calkins*, 10 Hun, 497; 74 N. Y. 1.) These defendants had all the right to the water that the Faulkners had and gave them as appurtenant to said premises. (Angell on Water-courses, § 158; *Oakley* v. *Stanly*, 5 Wend. 523; *Ogden* v. *Jennings*, 62 N. Y. 531; *Elliott* v. *Fitchburg R. R. Co.*, 10 Cush. 193; *Bruce* v. *Yale*, 10 Allen, 443; *Tubor* v. *Bradley*, 18 N. Y. 109.) All the interest plaintiff could have in the water was the right to have it run to his hotel for the use of the hotel and barns as it has run since 1851. (*Rogers* v. *Bancroft*, 20 Vt. 257; *Rood* v. *Johnson*, 26 id. 64; *Adams* v. *Warner*, 23 id. 395; *French* v. *Carhart*, 1 N. Y. 101.) All that the plaintiff had an interest in was what was then used upon the premises when the deed was executed. (*Cromwell* v. *Selden*, 3 N. Y. 258; *Comstock* v. *Johnson*, 46 id. 615; *Olmstead* v. *Loomis*, 9 id. 427.) The plaintiff is estopped now from claiming any greater interest in the water than he has had for twenty years or from claiming that the defendants, Griffis, Pettingill, and Twillinger have not the right to use the water from the company's pipes. (High on Inj. 313, § 559; *Jaycox* v. *Clark*, Walk. [Mich.] 249; *Payne* v. *Paddock*, id. 487.)

*O. W. Smith* for Suydam F. Wheeler, respondent. Defendant Wheeler must be considered a mortgagee in possession and is fully protected thereby. (*Van Duyne* v. *Thayne*, 14 Wend. 233 ; *Watson* v. *Spencer*, 20 id. 260 ; *Munro* v. *Merchant*, 26 Barb. 383 ; *Sahler* v. *Signer*, 44 id. 606 ; *Winslow* v. *McCall*, 32 id. 241 ; *Chase* v. *Peck*, 21 N. Y. 581; *Hubbell* v. *Sibley*, 50 id. 472 ; Willard's Eq. Jur. 446.) The reservation in the Faulkner deed, by which plaintiff claims the surplus water, is not an exception. It is a personal reservation only. (*Hornbeck* v. *Westbrook*, 2 Johns. 73 ; *Hornbeck* v. *Sleight*, 12 id. 301; *Bridger* v. *Pierson*, 1 Lans. 481; *Ives* v. *Van Auken*, 34 Barb. 566 ; *Pierce* v. *Keator*, 70 N. Y. 419 ; 9 Hun, 419.) The grant became certain by locating it. It limited the extent of the grant. (*Fitzhugh* v. *Raymond*, 49 Barb. 635 ; Wash. on Eas. 225, 240 ; *Jones* v. *Percival*, 5 Pick. 485 ; 64 N. Y. 564.)

ANDREWS, J. It is claimed on behalf of the plaintiff, that the deed of March 26, 1851, from the Faulkners to James W. and Charles Knapp, to whose rights the plaintiff has succeeded, conveyed to the grantees therein, all the surplus water to which the grantors were entitled under the reservation in their deed to the New York and Erie Railway Company, of December 20, 1849. This claim presents the main question upon this appeal.

If the Knapps acquired by their deed the whole surplus water, then the judgment in so far as it adjudges that the defendants Pettingill, Griffis, Terwilliger and Wheeler, are entitled to draw water from the pipe of the railway company for the use of their premises respectively, is erroneous, for the reason that they do not claim such right under the Knapp title, but under and through the Faulkners and their grantees, by deeds or license subsequent thereto. If the Knapps did not by their deed acquire the right to the whole surplus water, then the right of the plaintiff to relief against the individual defendants will depend upon the further question, whether the rights actually enjoyed by them, are in conflict with the prior right of the plaintiff under the Knapp title.

The deed of March 26, 1851, conveyed to the Knapps, a hotel property and premises in the village of Chehocton (now Hancock), then owned by the Faulkners, the hotel having been erected on a part of the Faulkner farm (so called), and which at the time was supplied with water through a half-inch pipe, connected with a wooden conduit of the railway company, through which the company drew its supply of water for its depot and water station in Hancock. The deed after describing by metes and bounds the premises conveyed, and as containing nineteen-twentieths of an acre of land, more or less, proceeds as follows: " and also all the right, title and privilege to, and of all the water now used on said premises, or to which the parties of the first part, or either of them, may be entitled to by use, occupation, reservation, or agreement with the New York and Erie Railroad Company, or otherwise, as appurtenant to said premises, together with the appurtenances thereunto belonging, or in any wise appertaining." The reservation or agreement with the New York and Erie Railroad Company referred to in this deed, is contained in the deed from the Faulkners to that company, of December 20, 1849. By that deed the Faulkners conveyed to the company about four acres of land, on which its depot and water tanks were subsequently located, and the description of the land conveyed is followed by these clauses: " the *party* of the first part also hereby conveys the right to draw water from any springs or streams on their premises, for the purpose of supplying a depot and water station at Chehocton, by means of pipes or other suitable device in a proper manner, with a full right of ingress and egress for the purpose of laying and repairing said pipes, or the device and the tanks connected therewith. The parties of the first part reserving to themselves the right by connection pipes, or other suitable devices, of drawing from the pipes or other device of the party of the second part, so much of the water as shall not be found necessary for supplying said depot and water stations. It being distinctly understood that the surplus water only is reserved; should there be none at any time, then and during such period, it shall be lawful and right for the party

of the second part to shut off the communication of the *party of the first part* from their said pipes, or other device."

Construing the clause in the deed to the Knapps, relating to the water right and privilege, in the light of the surrounding circumstances, it seems to be very plain that it was not the intention of the Faulkners to convey to the Knapps all the surplus water reserved in the deed to the New York and Erie Railroad Company, but only so much thereof as was then used on the premises conveyed, and to draw the same through a pipe connecting with the pipe of the company. The reference to the agreement with the New York and Erie Railroad Company, was inserted not by way of enlargement of the right of the grantees given by the prior clause, but as a limitation thereof, or at least such reference was made *ex abundanti cautela,* since the company under its deed, in case of an insufficient supply of water, was entitled to cut off all supply to the hotel premises, and the right granted to the Knapps would necessarily be subject to this contingency. It cannot be supposed that the Faulkners intended to deprive themselves of any right in the surplus water, or of the benefit to their remaining property of the surplus which should remain after satisfying the demands of the railroad company, and furnishing to the hotel premises the quantity theretofore used thereon.

This conclusion renders it necessary to consider whether the judgment declaring the rights of the individual defendants before named, is erroneous as to the plaintiff. The plaintiff's right under the deed of March 26, 1851, as we construe it, is to draw from the conduit of the railroad company, so much of the surplus water for the use of their premises, as will pass through a half-inch pipe. The title of the Knapps to this portion of the surplus water was prior to the right of any of the individual defendants, and whatever rights they or any of them have acquired in the surplus water, are subordinate to the prior right of the plaintiff under the Knapp title, so that in case of a deficiency of water, the plaintiff is entitled to his supply before any of the individual defendants are entitled to draw. The judgment in defining the rights of the defendants is some-

what obscure, and should we think, to avoid future con-
troversy, be amended by declaring such priority.     The
plaintiff has no interest in any other respect in the de-
termination relating to the rights of the individual defend-
ants.     They have acquiesced in the judgment by not ap-
pealing therefrom, and we need not consider whether their
rights as between themselves have been correctly adjudged.
The deed to the Knapps, as printed in the error book, omits
the words "may be entitled to" in the clause relating to the
water-right above quoted, but they are inserted in the recital
of the description of the deed in the complaint and in the find-
ings (to which no exception is taken), and are manifestly
necessary to complete the sense.

The remaining question arises on the plaintiff's exception to
the conclusion of law in the findings of the trial judge, that
the plaintiff has no cause of action against the Erie railway or
its receiver, for not maintaining the dam erected by the New
York and Erie Railroad Company in 1850, and which was car-
ried away in 1857 and never rebuilt.     There was no right to
build the dam given by the Faulkners to the company in the
deed of December 20, 1849, in express terms.     But the dam
was erected by the company with the consent of the grantors,
for the purpose, as is found, "of collecting and preserving the
water of the brook in order to afford a permanent and unfail-
ing supply of water at said depot and water station."     There
was no covenant on the part of the company to build or main-
tain a dam, and the obligation to do so, if any exists, does not
rest in covenant, for the plain reason that there was no express
covenant in the deed to build or maintain a dam, and none can
be implied.     (1 R. S. 738, § 140.)     Nor in our opinion does
the fact that the railroad company for its own convenience
erected the dam in the first instance, create a continuing duty
to maintain it for the benefit of the Faulkners, or those who
have succeeded to their title.     The deed of December 20, 1849,
conferred on the railroad company an unrestricted right to
draw water from any springs or streams on the premises of the
grantors, for the purpose of supplying its depot and water

station by means of pipes or other suitable devices, but the right was burdened with the privilege reserved to the grantees to draw the surplus water not required for the use of the company, by connections with the pipes or other device which the company should arrange for the purpose of supplying itself with water. The company plainly in the first instance might have drawn the water through pipes connecting directly with the stream, and it assumed no duty to store it for the benefit of its grantors. The building of a reservoir afterward for its own advantage, created no easement in the Faulkners to have it maintained for their benefit. There was no indefiniteness in the grant. It conferred upon the company the right to all the water required for its depot and water station, and to take it by pipes or other devices. · The comprehensive language of the grant is inconsistent with the imputation of · an intention to limit the company to the use of such an amount of water as was then required for the purposes specified, or to confine it to the particular method of exercising its right, which should be first adopted. The practical construction of the grant by the parties is in accordance with this view. The dam was carried away in 1857, and from that time to the commencement of this action in 1875, the water was drawn directly from the stream, without, so far as appears, any objection being made on the part of the Faulkners or their grantees. The pipes were enlarged from time to time, not only without objection on their part, but with their consent. Having reached the conclusion that the construction of the dam and reservoir imposed upon the company no duty to maintain it, as between the company and the Faulkners, the plaintiff as the grantee of the Faulkners can have no better right.

The judgment should be modified by inserting a clause adjudging priority of right to the surplus water to the plaintiff as against the individual defendants in case of deficiency, and as so modified should be affirmed, with costs to the Erie Railway Company, and without costs to the other parties.

All concur.

Judgment accordingly.